GILBERT F. WOLF'S (dependent's) CASE.

Bristol.    January 12, 1933. — February 12, 1934.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act,* To whom act applies, Injuries to which act applies. *Jurisdiction. Admiralty.*

At the hearing of a claim of a dependent under the workmen's compensation act, it appeared that the decedent had been the captain and "one-man crew" of a barge towed from Fall River to Taunton; that, upon arriving at Taunton, it was unloaded at a wharf, the decedent moving it backward and forward in the process; and that as, in leaving the barge at the close of the day's work, he was using a ladder resting upon the barge and the wharf and not shown to have been fastened in any way to the wharf, he fell between the barge and the wharf and was drowned. *Held,* that

(1) In the circumstances, and for the purpose of determining jurisdiction, the ladder was not shown to be an extension of the land;

(2) The decedent's occupation was directly connected with navigation and commerce;

(3) The locality of the occurrence resulting in the death of the employee was on or in connection with the barge and in navigable waters, and was maritime;

(4) Even though the decedent may have struck against the side of the wharf in falling from the ladder, the accident was maritime;

(5) The locality of the occurrence and the employment of the decedent both being maritime, admiralty jurisdiction governed and the operation of the workmen's compensation act was barred.

The circumstance, that the workmen's compensation law of this Commonwealth is elective, does not affect the question, whether admiralty law governs the rights of the parties to proceedings under it.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board dismissing a claim by the dependent widow of an employee of Staples Coal Company.

In the Superior Court, the case was heard by *T. J.*

*Hammond*, J. Material facts are stated in the opinion. A final decree dismissing the claim was entered. The claimant appealed.

*W. G. Powers*, for the claimant.

*H. S. R. Buffinton*, (*R. C. Westgate* with him,) for the insurer.

RUGG, C.J. This is an appeal by the dependent widow of a deceased employee from a final decree of the Superior Court dismissing a claim under the workmen's compensation act entered in conformity to a decision of the Industrial Accident Board, whereby were affirmed the findings and decision of the single member to the effect that all the work of the deceased employee was performed on navigable waters, was maritime in its nature, and was not within the jurisdiction of the board. So far as this is a finding of fact, it must stand and be accepted as true if there is any evidence to support it.

There was evidence tending to show these facts: The deceased employee, a resident of Taunton in this Commonwealth, was employed by the Staples Coal Company, which was insured under the workmen's compensation act. He was captain and a "one-man crew" of a double end barge or scow used in carrying coal between Fall River and Taunton in this Commonwealth and several ports in the State of Rhode Island. The barge did not go outside of Narragansett Bay. The barge had no motive power of its own, but was towed by a tug. It was equipped with a small pilot house, living quarters for the captain, and a gasoline pump to take care of leakage. The duties of the employee are not minutely set forth in the evidence. He had to load his own boat, and occasionally would do extra work when there was no regular work to do. He lived on the barge, except that when in Taunton he lived at home. Manifestly his work was chiefly, if not exclusively, on the barge. It is stated in the dependent's brief that the employee's "only duty was to steer the barge as it was towed up the river by a tug." On the morning of November 30, 1928, the barge left the wharf of the employer in Fall River at six o'clock with a cargo of coal and was towed up the

Taunton River to the wharf of the employer in Taunton, all the way through navigable waters, reaching there about half after nine in the morning. There was no one else on the barge except the deceased employee. After arrival in Taunton, the process of unloading the cargo began and in this work it was the duty of the employee to move the scow backward and forward at the wharf. Work ceased about five o'clock in the afternoon and the employee came to the boiler room on the wharf, asked that the gate be not locked as he had forgotten something, and then went back on board the barge. Going on board and leaving the barge were accomplished by means of a ladder which went quite a "way in on the barge" and which lay over the wharf about two feet. There was no evidence that it was fastened in any way to the wharf. The distance between the wharf and the barge was about two and one half feet. The barge was not over one foot lower than the wharf as it was nearly high tide. Coming off the barge on his way home the employee reached the second rung of the ladder and fell overboard. The wharf being slanting, the bottom of the barge was nearer the portion of the wharf opposite it than the rail of the barge was to the edge of the wharf. The space between was narrow. One witness testified that, though possible, it was improbable that the employee fell from the ladder into the water without touching anything. Another witness testified that he heard "kind of a bump against something as the employee went into the water." The body was recovered from the river within half an hour after the fall of the employee into water. The cause of death was stated in the death certificate to be accidental drowning. G. L. (Ter. Ed.) c. 46, § 19. *Silva* v. *Fidelity & Casualty Co.* 252 Mass. 328, 330.

The words of the workmen's compensation act are broad enough to include the case at bar. The only question is whether there was error in the decision that relief could not be granted because the case falls within the admiralty jurisdiction of the Federal courts. *Gillard's Case*, 244 Mass. 47. *Toland's Case*, 258 Mass. 470. The determination of that question depends upon the principles declared by the Su-

preme Court of the United States upon this branch of the law.

The accident had a maritime locality. It happened on board a vessel lying in navigable waters and moored to a wharf. *Nogueira* v. *New York, New Haven & Hartford Railroad*, 281 U. S. 128, and cases reviewed. The contract of employment of the employer with the decedent related to maritime affairs. To be the captain and one-man crew of a barge used exclusively in commerce in navigable waters pertains to maritime matters. The work of the employee was on the barge and was concerned directly with navigation and commerce. The circumstance that the employee had gone upon the wharf and returned to the barge is of no consequence in this connection. The jurisdiction of admiralty over a tort or injury depends upon its having been committed or having occurred on navigable waters. *London Guarantee & Accident Co. Ltd.* v. *Industrial Accident Commission*, 279 U. S. 109, 123, and cases reviewed. A wharf, or staging resting on a wharf, is considered an extension of land. An accident having its causative origin there is not maritime in nature. Where the cause of action arises on land maritime law does not govern. *T. Smith & Son, Inc.* v. *Taylor*, 276 U. S. 179, and cases cited. A movable ladder resting upon but not fastened to a wharf and partly on a vessel is not considered an extension of the land. Admiralty law governs jurisdiction and liability where a person leaving the vessel by such a ladder falls therefrom into the water. *The Strabo*, 98 Fed. Rep. 998. The employee's occupation was directly connected with navigation and commerce. That conclusion necessarily follows from the circumstance that he alone was in charge of the barge as she was being towed through navigable waters. The barge was engaged in commerce. The moving of the barge while being unloaded forward and backward at the wharf was a part of commerce and navigation. *Northern Coal & Dock Co.* v. *Strand*, 278 U. S. 142, 144. *Employers' Liability Assurance Corp. Ltd.* v. *Cook*, 281 U. S. 233, 236. Admiralty jurisdiction attaches although the commerce in question may be wholly intrastate. *London Guarantee & Accident Co. Ltd.* v. *Industrial Accident*

*Commission,* 279 U. S. 109, 123. *Nogueira* v. *New York, New Haven & Hartford Railroad,* 281 U. S. 128, 138. The locality where the accident occurred is the decisive factor. Even though the deceased may have struck against the side of the wharf in falling from the ladder, the accident was maritime in origin and nature. Locality as the test of jurisdiction is the locality of the "substance and consummation" of the occurrence resulting in the death of the employee. He was on the ladder in the act of leaving the barge. The "substance and consummation" of his injury took place on or in connection with the barge and in navigable waters. The damage was received and the injury consummated on the water. The point of application of the originating force which caused the employee to be thrown overboard was on the barge and the ultimate result of death was due to drowning. Both were maritime. The accident and death occurred within locality subject to admiralty jurisdiction. *Vancouver Steamship Co. Ltd.* v. *Rice,* 288 U. S. 445, 448. They were, therefore, maritime in character. The cause of action was complete within the locality subject to cognizance in admiralty. It is the converse of cases illustrated by *Martin* v. *West,* 222 U. S. 191, 197, but the discussion in that opinion supports the conclusion here reached.

The fact that the workmen's compensation law of this Commonwealth is elective does not affect the question whether admiralty law governs the rights of the parties. The same is true where the injury arose from pure accident and not through the fault of anyone. *Employers' Liability Assurance Corp. Ltd.* v. *Cook,* 281 U. S. 233, 236. The circumstance that the deceased was leaving the barge at the end of work for the day has no relevancy to the question whether the proximate cause of his death was maritime in nature.

The case at bar does not present a matter of mere local concern offering no conflict with the characteristic features of general maritime law within the doctrine of *Grant Smith-Porter Ship Co.* v. *Rohde,* 257 U. S. 469, *Millers' Indemnity Underwriters* v. *Braud,* 270 U. S. 59, and *Sultan Railway & Timber Co.* v. *Department of Labor & Industries,* 277 U. S.

135. The scope of those decisions was explained· at some length in the one last cited. See also *Crowell* v. *Benson,* 285 U. S. 22, 39, note. It is not necessary to go over the ground so completely covered by these authoritative adjudications. The case at bar is distinguishable from *T. Smith & Son, Inc.* v. *Taylor,* 276 U. S. 179, where a blow from a sling used in unloading a vessel gave rise to the cause of action. The blow was given and took effect while the deceased was upon the land. It was the sole and proximate cause of death. It˙ was therefore not maritime in nature. The case at bar also is distinguishable from *Herbert's Case,* 283 Mass. 348, where the employment was substantially nonmaritime in character and related to˙ purely local matters.

The dependent relies upon *Rickert* v. *State Industrial Accident Commission,* 122 Ore. 565, which held that an injury sustained by a longshoreman engaged on shipboard in unloading a vessel lying in navigable waters through accident fell within the State workmen's compensation act and was not maritime in nature. We are unable to follow that decision because it seems contrary to binding adjudications of the United States Supreme Court. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149. *Nogueira* v. *New York, New Haven & Hartford Railroad,* 281 U. S. 128. *Employers' Liability Assurance Corp. Ltd.* v. *Cook,* 281 U. S. 233. The facts in the case at bar, in our opinion, distinguish it from *Lermond's Case,* 122 Maine, 319, and other aspects of that case need not be considered.

It follows from the principles declared and the points decided in the cited cases that, since the locality of this accident in its origin and ending was maritime and the employment of the deceased was maritime and directly connected with navigation and commerce, admiralty jurisprudence governs the rights of the parties and the operation˙ of the workmen's compensation act is barred. The reason given is that to hold otherwise would be prejudicial to the characteristic features of maritime law and a violation of the exclusive admiralty jurisdiction conferred upon

the Federal courts by the Constitution of the United States. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. By these decisions we are bound.

*Decree affirmed.*