GRACE E. LAUZON'S (dependents') CASE.

Essex. November 14, 1938. — February 1, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Workmen's Compensation Act,* To whom act applies. *Jurisdiction,* Maritime matters. *Admiralty.*

An injury received by an assistant cook, who lived on a steamship plying in navigable waters between Boston and Nantasket and prepared meals for the crew, was maritime in its origin and not compensable under the workmen's compensation act.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

From a final decree entered by order of *Burns,* J., dismissing the claim, the claimants appealed.

*J. J. Foley & J. D. Malone,* for the claimants, submitted a brief.

*W. G. Reed,* for the insurer.

DOLAN, J. This is a workmen's compensation case. The claim for compensation was dismissed by the single member "for lack of jurisdiction." The reviewing board adopted his findings, rulings and decision. Upon certification to the Superior Court, the judge entered a decree in accordance with the decision of the board.

The claim is that of the dependents of Grace E. Lauzon, who was hired about July 1, 1937, by the Nantasket-Boston Steamboat Company as assistant cook on board the steamship "Nantasket." Under her contract she was to receive $40 a month and room and board. She lived on the boat. "Her work was to prepare all vegetables and take care of the kitchen, wash pots and pans and dishes, and to help the cook in general." The meals she helped prepare were for the crew. After she had been working about two weeks, she developed a blister on her right index finger while peeling potatoes in the course of her employment. Subse-

quently, the blister became septic and caused her death on July 26, 1937, while a patient at the Lynn Hospital.

The "Nantasket," of ten hundred thirty-three gross tons, carried passengers and freight between Boston and Pemberton and Nantasket, all within this Commonwealth. Its course, which was twelve miles long and took it one mile from the coast, was from a wharf in Boston Harbor, through the main channel used by ocean going vessels, and then through Hingham Bay and the Weir River.

The only question presented for decision is whether the claim can be prosecuted under the workmen's compensation act, or is outside of its scope as being within the exclusive jurisdiction of admiralty.

Although the workmen's compensation act is broad enough in its aims to include injuries sustained in maritime pursuits, it is settled that the act will not be applied to cases within the Federal judicial power extending to "all cases of admiralty and maritime jurisdiction." United States Constitution, art. 3, § 2. *Dorman's Case*, 236 Mass. 583, 584, and cases cited. *Gillard's Case*, 244 Mass. 47, 51–52. *Toland's Case*, 258 Mass. 470. *Herbert's Case*, 283 Mass. 348, 350. *Wolf's Case*, 285 Mass. 181, 183. *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205. *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.

As a general rule the jurisdiction of admiralty over a tort or injury depends upon its having been committed or sustained on navigable waters. *Proctor* v. *Dillon*, 235 Mass. 538, 541. *Herbert's Case*, 283 Mass. 348, 350. *Wolf's Case*, 285 Mass. 181, 184. *London Guarantee & Accident Co. Ltd.* v. *Industrial Accident Commission of California*, 279 U. S. 109, 123–124, and cases cited. See *Kelly* v. *Eastern Steamship Lines, Inc.* 278 Mass. 361, 364.

Nevertheless, if the injury is received in the course of employment of local character, which concerns only local matters, and has but an incidental relation to navigation and maritime commerce, then a State law, such as our workmen's compensation act, may be applied, since in such circumstances its application will not work material prejudice to the general maritime law. See *Ciaramitaro's Case*,

288 Mass. 448, 450, and cases cited; *Gillard's Case*, 244 Mass. 47, 53, 55; *Toland's Case*, 258 Mass. 470, 474; *P. J. Carlin Construction Co.* v. *Heaney*, 299 U. S. 41. Since the deceased received her injury while performing her work on a vessel travelling in navigable waters, the "accident had a maritime locality" and admiralty jurisdiction attaches, although the commerce in which the vessel was engaged was wholly intrastate. *Wolf's Case*, 285 Mass. 181, 184–185, and cases cited. Compensation, therefore, for the injury and resultant death cannot be had under the workmen's compensation act unless the situation presented was of merely local concern. The claimants have contended that the work in which the deceased was engaged was of "mere local concern," and have urged that her work as assistant cook was the same as that which is done in any restaurant on shore; that it was not necessary to the proper navigation of the vessel to assist in feeding the crew, since they could have been fed on shore; and that the mere fact that the kitchen in which she worked was on a boat travelling in navigable waters is not sufficient ground for classifying her employment as maritime and directly connected with navigation. They further argue that the report of the single member contains no evidence which would warrant a finding that she was a member of the crew.

It is true that in *Brightman's Case*, 220 Mass. 17, compensation under the workmen's compensation act was awarded for an injury causing death sustained in the course of the employment of one serving as a cook upon a lighter, but it was later pointed out that the question whether jurisdiction lay with the Industrial Accident Board or with the courts of admiralty was not there raised. See *Duart* v. *Simmons*, 231 Mass. 313, 320, where the injury in the *Brightman* case is referred to as a "maritime" injury. See also *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, decided after the decision of the *Brightman* case, to the effect that a State workmen's compensation act is not applicable in cases of injuries of maritime origin. See also *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.

It appears from excerpts of a certificate on file in the

Custom House in Boston, which are made a part of the record in this case, that the "Nantasket" is "required to carry a full complement of licensed officers and crew, consisting of" (there follows a list of men active in the actual operation of the vessel) and "eight persons when needed in steward's and other departments not connected with the navigation of the vessel." The deceased, having been one of the persons "needed in [the] steward's" department, was a member of the crew. In other jurisdictions cooks have been treated as seamen or members of crews. *Allen* v. *Hallet,* Abb. Adm. 573. *Bean* v. *Stupart,* 1 Doug. K. B. 11. In the case of *Maryland Casualty Co.* v. *Lawson,* 94 Fed. (2d) 190, 192, it is said: "We attempt no definition of the crew of a vessel. . . . The nature of the work done is not determinative. Engineers and cooks as well as sailors are included." See also *Duart* v. *Simmons,* 231 Mass. 313, 320.

The deceased lived on the vessel involved and performed her work of assisting in the preparation of meals, while it was travelling in navigable waters. We think it must be held that her work was not merely of local concern, but that it had a connection with navigation and maritime commerce, and that the injury which caused her death was maritime in its origin and not compensable under the workmen's compensation act. The entry will therefore be

*Decree affirmed.*